RECEIVED

AUG - 7 2017

AT_____M
ROBERT N. TRGOVICH, CLERK
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

If a co-conspirator loses his life as a result of a conspiracy, (even by suicide) the other co-conspirators are culpable in that conspirators death.

The facts contained within this legal brief are to be submitted to local bureau of investigation for criminal violations against plaintiff in violation of his civil rights.

---

**First receipt card:**

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)    B. Date of Delivery
                                          5-8-01
C. Signature
X  William Gmm                □ Agent
                             □ Addressee
D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   □ Certified Mail    □ Express Mail
   □ Registered        □ Return Receipt for Merchandise
   □ Insured Mail      □ C.O.D.
4. Restricted Delivery? (Extra Fee)    □ Yes

PS Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952

1. Article Addressed to:

Office of the
Att FILED . General

FILED
AUG - 7 2017
AT_____M
ROBERT N. TRGOVICH, CLERK
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

2. Article Number (Transfer from service label)
7000 1670 0013 9113 5209

4:17CV 68

---

**Second receipt card:**

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)    B. Date of Delivery
                                          12-11-00
C. Signature
X  William Gmm                □ Agent
                             □ Addressee
D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   ☑ Certified Mail    □ Express Mail
   □ Registered        □ Return Receipt for Merchandise
   □ Insured Mail      □ C.O.D.
4. Restricted Delivery? (Extra Fee)    □ Yes

PS Form 3811, July 1999    Domestic Return Receipt    102595-99-M-1789

1. Article Addressed to:

Office of Attorney Gen.

2. Article Number (Copy from service label)
A 7000 0520 0025 3469 8607

---

The State's (In a Conspiracy to Falsely Convict) Attorney Generals office was notified of violations originating in the 23rd judicial circuit of Obstruction of Justice and perjury. (Tippecanoe County)    (I.C. 35-44-3-4)    (35-44-2-r)

By granting petition of plaintiff Kevin J. Davison essentially filed charges (April 2001) against both Prosecutor and Police (George Heid )→affirmed Judge (January 2002)

This led to the Judge's alleged suicide. The State is guilty of denying the plaintiff his Constitutional Rights as guaranteed under the 4th, 5th, 6th, and 14th Amendments.

(i)

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE *Superior co No 2* |
| | )SS: | |
| COUNTY OF TIPPECANOE | ) | OF TIPPECANOE COUNTY |

STATE OF INDIANA )

**FILED**

V. )

CAUSE NO. 79002-9903-cf-27

**MAR 11 1999**

*In regards to this case former prosecutor of the 23rd Judicial circuit (Jerry Bean) and court appointed attorney Bruce Graham entered into a conspiracy to falsely convict along with the 2 police officers whose names appear on page 2.*

KEVIN DAVISON
3615 Brampton Lane
Lafayette, Indiana 47905

*Wrong →* DOB: 10/12/81
*Wrong →* SSN: 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

Clerk Superior Court No. 2 Tippecanoe Co.

### AFFIDAVIT OF PROBABLE CAUSE

Affiant, being first duly sworn upon, states and deposes that he is a law enforcement officer for Tippecanoe County and as such, is familiar with the investigation into a reported shooting on the 9th day of March, 1999, in Tippecanoe County, Indiana. Your affiant was involved in the investigation of said shooting at the Village Pantry, located at 3898 State Road 38 East, Lafayette, Indiana. Police found the individual to be Lucas A. Wells. Your affiant spoke with Dr. Martin D. Avolt, Tippecanoe County Coroner, who advised your affiant that Wells had been taken to Home Hospital where he was pronounced dead by Dr. Lance Seagren due to a gunshot wound.

*Kevin Davison was never advised of his Miranda Rights because there was no reason to charge him*

Further investigation lead police to take a sworn statement from Kevin Davison. Davison told Det. Downard and your affiant, after having been advised of his Miranda rights and having his father present as he was only 17 years of age, that he and Tamir Rahman agreed to do "a lick on Luke" at the Village Pantry. Davison explained that "a lick" meant robbing Luke and the plan was to take "Bud", meaning marijuana. Davison went to meet Rahman at the Village Pantry after getting a gun. Davison couldn't find Rahman so he went into the Village Pantry. When he exited, he saw Rahman and "Luke" in "Luke's" car, struggling. Davison stated that he saw "Luke" try to get out of the car. Then as "Luke" opened the door, Davison heard a pop. "Luke" fell outside the car and Rahman came out of the car, went to the body and then Davison and Rahman both fled on foot with Rahman carrying a gray or black bag.

*If that were true, Davison would have been found guilty of Robbery while armed. Instead he was found not guilty * (Invalid trial 2-24-00)*

Further investigation led officers to obtain a consent to search from Donna Smith, who lives at 1656 Briarwood Court, Lafayette, Indiana. In executing said consent to search, the police located Tamir Rahman in a shed behind said residence. Also found in the shed by Det. Jeff Davis of the Lafayette Police Dept. was a silver or white bag containing a leafy plant-like material. Det. Davis knows, based upon his training and experience as a police officer and a technician for the Lafayette Police Dept., that said green leafy substance was marijuana based upon its appearance and its odor. Det. Davis also knows, based upon his training and experience as a law enforcement officer, that the

*The plaintiff and his father, who was present at the time of statement, signed a juvenile waiver permitting police to question him. However, since states' charges were bogus, plaintiff's status remained that of a minor.*

*(This affidavit was submitted to the court to establish a conspiracy that didn't happen)*

weight of the green leafy plant substance would be more than 30 grams but less than 10 pounds and estimated it to be approximately ½ pound.

Affiant further states that Tamir Rahman was transported to jail. At the jail, Tamir Rahman's clothes were seized and they had what appeared to be blood on them.

Your Affiant believes Dr. Martin D. Avolt to be reliable and credible as he was acting in the course of his duties as coroner of Tippecanoe County.

Your Affiant believes Dr. Lance Seagren of Lafayette Home Hospital to be reliable and credible as he was acting in the course of his duties as a physician licensed by the State of Indiana.

Your Affiant believes Det. Jeff Davis to be reliable and credible as he was acting in the course of his duties as a law enforcement in Tippecanoe County, Indiana.

Affiant believes the statements from Tamir Rahman and Kevin Davison to be reliable and credible, insofar as corroborated by police investigation, as it is against his penal interest. *This was a false statement of a material fact, thereby making this affidavit invalid*

Further, Affiant saith not. *Tamir Rahman made no statement at that time*

Affiant does swear or affirm, under penalties of perjury as specified under Indiana Code 35-44-2-1, that the foregoing representations are true to the best of affiant's knowledge and belief. *No warrant shall be issued except under oath or affirmation (4th Amendment)*

Dated 3-11-99 Signed *David J. DeLeon*

*David DeLion along with Officer Chris Downard testified during the trial (invalid) of Kevin J. Davison Feb 22-24 2006 that Davison told them on the morning of March 10 1999 that the night before (March 9, 1999) he had went to the Village Pantry, with a gun, to assist in robbing the victim, Lucas Wells of "One or two pounds of marijuana." The true facts of the case proves this to be false. Therefore the warrant obtained for the arrest of the defendant was invalid under the provisions of the 4th Amendment of the U.S Constitution clause of unlawful search and seizure and "Probable Cause"*

# Heck    v    Humphrey

512 U.S 477, 114 S ct 2364 129 L. Ed 2d 383
(1994) see also §1:5.

There the U.S Supreme Court ruled where a judgement for a plaintiff would necessarily imply the invalidity of the criminal conviction or sentence no suit is permissable ~~imply~~ ~~th~~ unless the conviction or sentence at issue has been reversed, expunged, _invalidated_ or _otherwise called into question_

See Gibson v Superintendent of N.J Department of Law and Public Safety, Division of State Police, 411 F 3d ~~44~~ 427 (3d Cir 2005) cert denied 126 S Ct 1571, 164 L. Ed 2d 326 (US 2006) (Limitations period for false arrest and false imprisonment claims did not begin to run until conviction was vacated.)

See Wiley v. City of Chicago, 361 F 3d 994 (7th Cir. 2004) cert denied, 593 U.S 819, 125 S Ct 68, 160 L.Ed. 2d 28 (2004) (If plaintiff was arrested and prosecuted solely on the basis of drugs planted by arresting officers (false evidence) then attack on arrest _would_ necessarily ~~imply~~ challenge legality of prosecution premised on planted drugs and civil suit for false arrest _would_ necessarily imply invalidity of potential conviction and 4th amendment claim would not begin to run until conviction was vacated and charges dismissed.)

See Wolfe v Perry 412 F 3d 707 (6th cir. 2005) (Plaintiffs claim against officer based on allegations that prosecution was based on information officer knew to be false and statute did not accrue until the dismissal of criminal charges.)

Harvey v Waldron 210 F 3d 1008, 1014, 9th cir 2000 and cases cited therein.

Compare Trzebuckowski v City of Cleveland 319 F 3d 853, 2003 Fed App. 0252 P 6th cir. 2003

IN THE _Superior II_ COURT OF _Tippecanoe_ COUNTY

STATE OF INDIANA

KEVIN J. DAVISON )
_____ )
Full Name of Movant )
)
)
_____ ) Case No. _79DU2 0105 PC 7_
Prison Number (if any) ) (To be supplied by the clerk
) of the court)
)
v. )
)
)
STATE OF INDIANA, Respondent. )

**FILED**
**APR 28 2001**
Clerk Tippecanoe Court No. 2 Tippecanoe

## PETITION FOR POST-CONVICTION RELIEF

## INSTRUCTIONS -- READ CAREFULLY

In order for this motion to receive consideration by the court, it shall be in writing (legibly handwritten or typewritten), signed by the petitioner and verified before a person authorized to administer oaths, and it shall set forth in concise form the answers to each applicable question. If necessary, petitioner may furnish his answer to a particular question on the reverse side of the page or an additional blank page. Petitioner shall make it clear to which question any such continued answer refers.

This motion must be filed in the court which imposed sentence.

Under the provisions of Rule PC 1, petitioner is required to include in this motion every ground known to him for vacating, setting aside or correcting his conviction and sentence. Be sure to include every ground.

Since every motion must be sworn to under oath, any false statement of a material fact therein may serve as the basis of prosecution and conviction for perjury. Petitioners should therefore exercise care to assure that all answers are true and correct.

If the motion is taken in forma pauperis, it shall include an affidavit (attached at the back of the form) setting forth information which establishes that petitioner will be unable to pay costs of the proceedings. When the motion is completed, _the original and two copies_ shall be mailed to the clerk of the court from which he was sentenced.

1. Place of detention, if detained _Newton County Jail Kentland Indiana - 47951-1291. (Legal Laison_
   Kevin Davison Sr
   1015 N 9th Apt B
   Lafayette In 47904-193

Addendum to Post Conviction
Relief filed in 2001

STATE OF INDIANA                    )              SUPERIOR COURT NO. 2
                                    ) SS:
COUNTY OF TIPPECANOE                )              OF TIPPECANOE COUNTY

It would not have been necessary to appoint the Public Defender
to represent the defendant when the Judge had overturned
KEVIN J DAVISON vs STATE OF INDIANA    the conviction on the grounds
                                        contained within the petition
CASE NUMBER:  79D02-0105-PC-00007      by granting the petition.

State Public Defender appointed to represent the defendant, Kevin

J. Davison, in his petition for post-conviction relief.

Copy to defendant, Prosecuting Attorney, and State Public Defender.  jj

DATED: May 3, 2001   (State Public Defender failed to represent)
                     (the defendant as appointed by the court
                     ( Mario Jovan)
                          George J. Heid
                          Judge

As the presiding Judge involving the investigation
of my son's case, (trial) The late Judge would not
have granted his petition unless the grounds set forth
within weren't based on fact. Instead he would have
cited the petitioner for perjury. This, within itself,
overturned the jury's guilty verdicts.

However, the trial and conviction were invalid anyway
because it was pursuant to a warrant obtained under
false pretenses. The "State" has violated the defendant's
Constitutional Rights under the 4th and 14th amendments.
Also the trial court, while representing the State, twice
is guilty of providing the indigent petitioner with
ineffective counsel[1] during his invalid trial,[2] during the appeal

*[handwritten top right:] Kevin J. Davison, Sr*
*1015 N. 9th Apt B*
*Lafayette IN*
*47904-1939*

| | | |
|---|---|---|
| STATE OF INDIANA | ) )SS: | IN THE SUPERIOR COURT 2 |
| COUNTY OF TIPPECANOE | ) | OF TIPPECANOE COUNTY |
| KEVIN J. DAVISON | ) | |
| VS. | ) | CAUSE NO. 79D02-0105-PC-7 |
| STATE OF INDIANA | ) | |

*[stamp:] FILED MAY 24 2001 — Clerk Superior Court No. 2 Tippecanoe Co*

## STATE'S RESPONSE TO DEFENDANT'S PETITION FOR POST CONVICTION RELIEF

Comes now the State of Indiana, by Jerry Bean, Prosecuting Attorney for the Twenty-third Judicial Circuit and in response to Petitioner's Petition for Post-Conviction Relief states as follows:

1. That the Petitioner is barred by the doctrine of res judicata from raising those claims stated in his petition which were raised on appeal.

2. That the Petitioner has waived all grounds for which said petition may be granted.

3. That the Petitioner is barred by the doctrine of laches from raising claims stated in his petition.

\* 4. The State denied each and every allegation contained in such petition.

*[handwritten:] However the Judge in granting said petition, concurred the facts contained within. Most notable of which the trial was invalid based on 4th amendment violation of probable cause*

WHEREFORE, the State respectfully prays Petitioner's Petition for Post Conviction Relief be denied.

*[handwritten:] By signing his name to this document then using the U.S Postal Service in "futherance of a criminal act", Jerry J. Bean is in violation of Federal law, 940.18 U.S.C Section 1341 — Elements of Mail Fraud*

Respectfully submitted,

### CERTIFICATE OF SERVICE

I CERTIFY THAT ON THE 24th DAY OF May 2001, SERVICE OF A TRUE AND COMPLETE COPY OF THE ABOVE AND FOREGOING PLEADING OR PAPER WAS MADE UPON EACH PARTY OR AT-TORNEY OF RECORD HEREIN BY DEPOSITING SAME IN THE UNITED STATES' MAIL IN ENVELOPES PROP-ERLY ADDRESSED AND WITH SUFFICIENT FIRST CLASS POSTAGE AFFIXED, OR BY PERSONAL SERVICE.

Jerry Bean
Deputy Prosecuting Attorney
23rd Judicial Circuit
Courthouse, 301 Main Street
Lafayette, IN 47901
(765) 423-9305
Attorney No. 3494-79

PROSECUTING ATTORNEY

BY: _____

*[handwritten bottom:] 4. In denying the allegations contained in the petition, why didn't Mr. Bean file charges in the trial court pursuant to I.C-35-44-2-1 (Perjury) against said petitioner?*

(1)

The Case of the shooting at the Village Pantry on
State Rd 38 on March 9, 1999 (arising from Superior Court II Tippecanoe County Feb 2000) — In regards to a <u>False Conviction</u>

Kevin Jermaine Davison - Plaintiff, in Civil Action
(Charges were invalid Lacked Probable Cause) An officer of the Court
Cause No. 79D02-9303-CF-27 → (Attorney Bruce Graham) Defendant

Appeal No. 79A04-0007-CR-298 ⟶ (Attorney Thomas O'Brien)

The <u>invalid</u> conviction was affirmed 12-4-00.

Post Conviction Relief No. 79D02-0105-PC-0007    (PRO-SE)
p.[(filed 4-28-01)]
(Petition was granted based on Police and Prosecutorial misconduct.)
In a Conspiracy to Falsely Convict

    Petition was granted by the <u>late</u> George Heid on April 28
2001
~~2009~~ 9 months before his alleged "suicide" (January 19, 2002) The same day as the "Meet the candidates" Rally
                                              " " , Saturday

    The grounds were that the trial was invalid due to the
fact charged based on false information. This information appeared
           were
on the Affidavit of Probable Cause. This, Judge Heid concurred,
meant the trial, along with the very charges themselves, were
indeed <u>invalid</u>. (otherwise he would have denied the plaintiff's petition and filed perjury charges against him because claims were <u>affirmed under oath</u>)

    The <u>plaintiff</u> also claimed that by <u>altering</u> an audio taped
statement on the morning of March 10, 1999, Tippecanoe County (Defendant)
Sheriff's Department was in violation of <u>Indiana Code</u>. Detective
David DeLion was the officer named. Obstruction of Justice.
defendant                           35-44-3-4
This also was a violation of the <u>plaintiffs</u> immunities under the
4th amendment of the U.S. Constitution (Probable Cause)

    By presenting this false information to Superior Court II
Defendant
Tippecanoe County Indiana, former prosecutor of 23rd judicial
          Defendant              Defendant
circuit, State of Indiana, <u>Jerry Bean</u> did knowingly and
wantonly enter into a Conspiracy to Falsely Convict.
    This, too was affirmed by the <u>late</u> judge when

(2)

he granted the plaintiffs petition. It is important to note that the plaintiff was 17 years old and a minor at the time charges were filed against him. Because the charges were invalid from the start it was legally impossible to charge him as an adult. The "State" lacked probable cause.

Furthere evidence of Bean's complicity in the conspiracy was the fact that he ignored a court order by Judge Heid to turn over all evidence to the Court by April 11, 1999. (an unreasonable delay) I.C. 35-44-3-4

Heid compelled Bean to turn over the delinquent and altered audio tape on or about April 25, 1999. (what was the reason for the delay?) This again is a violation of Indiana Code 35-44-3-4 (This allowed time to remaster audio tape) Obstruction of Justice which Judge Heid once was again affirmed by granting the plaintiff's petition. (The fact that the judge had to compel Bean to turn over the tape was unreasonable Delay)

By affixing his signature to the Affadvit of Probable Cause containing false information, Detective De Lion was further guilty of Perjury. Indiana Code 35-44-2-1.

Later during deposition (summer 1999) and the invalid trial (February 22-24 2000), Christopher Downard (Defendant) entered into the Conspiracy to Falsely Convict by coroborating De Lion's false statements under oath. Downard is an officer for the Lafayette, In, Police Department (Defendant)

(6th Amendment Right to Counsel)

Also add in, for good measure, court appointed attorney, and officer of the Court, Bruce Graham, (Defendant) as the plaintiff's attorney. Obviously if the plaintiff knew this, wouldn't he?

Also entered into evidence, during the plaintiff's invalid

( 3 )

trial (February 22 - 24 2000) along with the altered audio tape and the transcript of the tape (which too, had been altered and declared inadmissable ) was a handgun that prosecutor and police claimed the plaintiff Told
    See Indiana Code[35-44-3-4] them he had on the night of March 9, 1999, the night they claimed the plaintiff committed.

Robbery: While armed, with the intent to do great bodily harm ( Count I ) Not Guilty (no firearm)

Conspiracy to Commit Robbery - also while armed (Count II

Conspiracy to Possess Marijuana (above 2% grams, also while armed )
                    See Halsema v State of In 2003
            ( State failed to prove all elements of its charges)
                                        The Gun
The fact that the plaintiff was found not guilty on Count I of the invalid charges during his invalid trial February 22 - 24, 2000 means he couldn't have possibly told police the police he had a gun on the morning of March 10, 1999.

This also affirms along with the plaintiff, and the late judge's charges of Obstruction of Justice and Perjury against each of the plaintiff's named in this letter.

This also means their employers, likewise are civilly liable based on violations of rights and immunities guaranteed under the 4th, 5th, 6th, and 14th amendments and eligible to file suit under U.S Supreme Court (plaintiff) decision Heck v Humphrey 1994.

This information will be submitted to the local office of the United States Department of Justice in Detroit, Mi for

(4)

possible ~~criminal~~ <u>criminal violations</u> by any of the defendant(s)

For instance, <u>former</u> (Jerry Bean) prosecutor used the U.S Postal Service in "Furtherance of a criminal act" in so-called prosecuting the <u>plaintiff</u> Kevin Jermaine Davison. ( ~~~~ ) (Defendant)

Therefore, while representing the State of Indiana, he violated a <u>Federal Statute</u>. (940.18 U.S.C Section 1341 ( Elements of mail fraud.)

Based on the fact that the Indiana Court of Appeals, as well as the Disciplinary Commission of the Indiana Supreme Court were notified of these violations as early as 2002 shows the "States'" complicity in "covering up" these violations. (via certified mail return receipt)

States' failure to show "due dilligence" in investigating and resolving the issue allowed prosecutor and police to escape prosecution for criminal violations mentioned throughout this (There are no Statute of limitations for murder) letter, including the <u>murder</u> of the late Judge George Heid whether it was a "suicide" or done by <u>someone else</u>. ~~some else.~~

The fact that this occurred mere hours after the "Meet the Candidates" rally on Saturday January 19, 2002 raises a <u>red flag</u> in lieu of the violations mentioned previously.

Does it not seem odd that an <u>intelligent</u> and <u>successful</u> man such as Judge Heid would suddenly, for no apparent reason, pick that particular time to end his life?

That alone suggest that his death might possibly have something to do with the Court. Most suicides are generally accompanied by a letter, explaining ~~the~~ person's actions.

No such letter was ever mentioned in regards to the

( 5 )

Remember
(the burden of proof in a civil case is much lower than that of a Criminal Case )
judges, once again alleged "suicide". ( It goes from "Beyond a Reasonable doubt" to probability )

Also there is the question "Why did the judge, after granting the plaintiff's petition based on the fact it was ~~valid~~ valid, then appoint Indiana Public Defender, Mario Jovan to represent the plaintiff, Kevin Jermaine Davison ?

When did Public Defender submit these facts to the Court of Appeals ? (or did he)
Or, better yet, why wasnt these facts reported to the States Attorney for Appellee
Attorney Generals Office, based on the validity of those claims ?
( Judge Heid had already authenticated plaintiff's claims by granting his petition for relief based on Police and Prosecutorial Misconduct )

The local media, W.L.F.I t.V and the Lafayette Journal and Courier helped ~~sensation~~ sensationlize this false case against the plaintiff Kevin Jermaine Davison (a minor). ( Between March 99 to August 2000.) By broadcast and in print

Therefore, they will be notified as to give them the opportuinity to finally print the truth in order to avoid any legal action (or broadcast)
( Liable and Defamation of ~~Char~~ Character (of a minor.)

The ramifications behind this could turn out to be catastrophic, because it could possibly open the door for a class action suit if other previous "convictions" arising from Superior Court II are challenged as a result.

However, plaintiff Kevin Jermaine Davison, in not wanting to further embarass the justice system, will be open to ~~the~~ the possibility of a quiet settlement if contacted within 14 days of receiving these documents, from the appropriate parties representing the "State

( 6 )

Indiana Code - 35-44 - 3 - 4

Obstruction of Justice

Person(s) who knowingly or intentionally
witholds, or unreasonably delays in        (The blk tape)
producing any testimony, information,
document or thing.

(the tape)
Alters, damages or removes any evidence,
document, or thing with intent to *prevent
it from being used or produced as evidence     (The tape)
in an official proceeding, or investigation     *of tape
*(the transcript)
or with the intent to mislead a public
servant. — The Jury

A Class D Felony

Indiana Code - 35-44 - 2 - 1

Perjury

A person who (1) Makes a false, material
statement under oath or affirmation, knowing
such statement to be false or not believing it     4th Amendment
to be true or (2) Has knowingly made (2) or
more material statements in a proceeding before
a court or grand jury which are inconsistent that
(1) of them is necessarily false

A Class D Felony

( 7 )

## Under the Indiana Rules of Professional Conduct

A prosecuting attorney __must__ refrain from prosecuting a charge that he knows is not supported by __probable cause__ 4th amendment

Furthermore a prosecutor must not engage in conduct involving dishonesty, fraud, deceit or misrepresentation or conduct that is prejudicial to the administration of justice.

A prosecutor __must__ not encourage either the commencement or continuance of any proceeding from any motive of passion or interest. In addition a prosecuting attorney is subject to Jerry Bean? __criminal prosecution__ for the violation of statutory provisions such as Indiana Code 35-44-3-4 (Obstruction of Justice)

Site for ~~authenicity~~ authenticity

West's A.I.C Title 34 Appendix Rules of Professional Conduct Rule 3.8 (a) 1996. Indiana Rules of Professional Conduct Rule 8.4 (c) and (D). Comment In. Rule(s) of Professional Conduct Rule 3.8. West's A.I.C § 34-1-60-4 seventh 1983 Shuttleworth v State 469 N.E 2d 1210.

West's A.I.C § ~~35-44-1-2~~ West's A.I.C 35-44-1-1

Indiana Constitution Article 7, § 13

West's A.I.C § 5-8-1-19 1989.

The Indiana General Assembly has also provided for the impeachment of prosecuting attorney for any __misdemeanor__ in office.

Indiana Code 35-44-3-4 is a Class D Felony (The Indiana General Assembly was __contacted__ in regards to Beans Violations (via Certified mail, return receipt) and took possession of credible ~~supporting~~ evidence on 7-03-06

*Excerpt from Indiana Court of Appeals - Memorandum Decision*

*This Verdict, above all else proves the plaintiff could not have told the police he had a gun. (Not Guilty)*

Davison was subsequently arrested and charged with robbery, conspiracy to commit robbery, and conspiracy to commit possession of marijuana. A jury trial was

*The gun was an element of all 3 charges. (Besides the trial was invalid)*

held on February 22-24, 2000. During the trial, Allen testified that Rahman had called

*( Have you ever heard of Due Process ? )*

Davison during the evening of March 9, 1999. She stated that after the call, Davison told

her that he was going to do a "lick" with Rahman and get them some money. Allen also

stated that Davison was to go with Rahman to assist him if a fight broke out with Wells.

Allen saw Davison put a gun in his coat pocket before leaving the apartment and

identified the gun during the trial. She also testified that Davison and Rahman were to

split the marijuana taken from Wells. Allen testified that Davison was wearing a black

jacket with fur around the hood and a black baseball cap. Further, the State introduced

video from the Village Pantry security camera showing an individual entering the store

wearing the clothing Allen described.

The State also introduced testimony from Detective Dave Delion ("Detective

Delion") of the Tippecanoe County Sheriff's Department and Officer Christopher

Downard ("Officer Downard") of the Lafayette Police Department. Both officers

interviewed Davison during the morning hours of March 10, 1999. ✳ Detective Delion

testified that after Davison waived his Miranda rights, Davison stated that Rahman called

and asked him if he wanted to do a "lick" at the Village Pantry. Detective Delion stated

that Davison admitted that he and Rahman were going to rob Wells of one or two pounds

*"See next page."*

of marijuana and that Davison took a gun to the Village Pantry. Officer Downard

*"          "*

corroborated Detective Delion's testimony. *By doing so, Downard perjured Himself.*

*✳This too was a false statement of a material fact. A juvenile waiver form was*
*signed giving police permission to question the plaintiff with his father present*
*However since the plaintiff had not been (3) read any charges or placed under arrest*
*he was never given any Miranda Rights merely detained (see Indiana Code,)*

*Perjury 35-44-2-*

*Excerpt from defendant's statement*

3-10-99

DD: Okay. And where is Tamir at? He in the front seat, back seat?

A: Passenger seat.

DD: In the front?

A: Um-hum.

DD: Okay.

A: And I heard a gun fire.

Q: How many?

A: One.

Q: Alright. And they inside the car or outside the car when the gun fired?

A: Inside the car. Well, inside and out. Halfway in and halfway out.

Q: Tell us what was going on.

A: Well they was, I guess they was tryin' to do a transaction. But he didn't have the, he wasn't really tryin' to make a transaction, he was tryin' to make a jack. A robbery. So...

Q: Tamir was.

A: Right.

Q: Rob him of what?

A: Some marijuana.

De-Lion Q: How much?

defendant A: "That I do not know."

(But didn't Detective De Lion and Officer (now Sargent) Downard testified in court (under oath) that defendant said "one or two pounds"! (?)

This admission appeared in Rahman's plea agreement statement

*Not if he had told you 5 pages (or about 5 minutes earlier)*
*that he said he had a gun in that statement (see page 8)*
*In that case, it would have been a fact, not a possibility*

A:    No.

*Turn to next page*

\* Q:    Now there is a possibility that you might've had a gun on you when you were over there at the V.P., where is that gun now?

A:    It's at my house.

Q:    The pants that you were wearing?

A:    At my house.

Q:    Coat you were wearing?

A:    My house.

Q:    Hat?

A:    At my house.

Q:    You wearing the shoes that you were wearing at that time now?

A:    No sir.

Q:    You got different shoes on then?

A:    Yes sir.

Q:    So the shoes you were wearing are where?

A:    At my house.

Q:    Where's the bag that Tamir took from Luke?

A:    I have no idea sir.

KD:   Now that's not at the house, is it?

A:    Huh-uh.  No.

*Excerpt from defendant's statement 3-10-99*

13

It is at this point during defendant's admission that his statement was tampered with and attempt was made to insert the lie!!

Q:  Okay.  Go ahead.

A:  And then I heard the gunshot then the <u>victim had got out of the car and then fell</u>.  And there was a lady there at the scene that seen it.  And I was on the hill where I sit the whole time.  Then after all that stuff occurred I ran home.

(This is not a question)

Q:  Wait a second, let's...  "a strap, a gat"

A:  I had <u>to</u> (UI)

Q:  Hang on a second.  You said the victim fell out of the car?
(This is not a question)

A:  Um-hum.

Q:  That's Luke, is the white guy?

A:  Yes.

Q:  Alright.  Then what did Tamir do?

A:  He ran up to him, I guess.  He ran up to the body.  And then I didn't see what he did after that.  I took off runnin'.

Q:  Did you hear what he said?

A:  No sir.

Q:  Did you say anything to Tamir?

A:  No sir.

Q:  You didn't say hey we gotta get out of here?

A:  No sir.

Q:  Hey I gotta get out of here?  You don't recall saying something to that effect?  Did Tamir tell you to get out of there?

Detective De Lion is caught thinking out Loud as he pauses the tape.

What about the strap?

p. 45

(It is giving his first "admissable" then previously had declaired inadmissable, then the transcript which he altered, which he had declaired inadmissable then previously he allowed admissable would be altered too. the transcript shows where!! "Tape" an exact copy of the transcript) see Obstruction of Justice I.C. 35-44-3-4.

Excerpt from Defendant's statement
3 - 10 - 99

18!

**By Max Showalter**
Journal and Courier

Speaking in a clear, firm voice, a Lafayette teen-ager pleaded guilty Wednesday to the drug-related shooting death of Lucas A. Wells, 18, on March 9, 1999.

Tamir Rahman, also 18, faces a maximum sentence of 48 years in prison when he is sentenced May 1 in Tippecanoe Superior Court 2 by Judge George Heid.✱

Through an agreement presented to the judge, Rahman pleaded guilty to a charge of voluntary manslaughter in connection with the shooting that occurred in the parking lot of the Village Pantry convenience store at Creasy Lane and Indiana 38 in Lafayette. No Conspiracy

Under questioning by his attorney, public defender Amy Hutchison, Rahman said he planned to buy one to two pounds of marijuana from Wells, and brought a gun to the scene because he had knowledge that Wells, in the past, had carried a gun.

Rahman said that while discussing the drug deal, he saw Wells put his hand down and thought he was reaching for a weapon. The two struggled, and Rahman used his gun to shoot the other teen. Then he grabbed the marijuana, hid in a shed behind his girlfriend's apartment and surrendered to Lafayette police the next day.

Rahman also pleaded guilty to four other charges:

■ Possession of marijuana — for taking the marijuana from the crime scene.

■ Receiving stolen property — for an unrelated incident involving the theft of clothing from The Finish Line at Tippecanoe Mall in October 1998.

■ Two counts of resisting law enforcement — for struggling with police officers while he was being arrested for the clothing theft.

"I'll have the opportunity

No Conspiracy [Which he couldn't do!]


Rahman

to accept or reject the plea agreement," Heid told Rahman. "By pleading guilty, you're admitting the truth to all these charges."

Last week, a third teen-ager involved in the incident was sentenced to 17 years in prison. Kevin J. Davison Jr., 18, was convicted of conspiracy to commit armed robbery and conspiracy to commit possession of marijuana.

Testimony presented during Davison's trial indicated Rahman called Davison before the shooting, told him to meet him at the Village Pantry, and said he planned to do "a lick" on Wells.

Police suspect Davison also brought a handgun to the scene, but the other two young men were struggling inside Wells' car when he arrived.

During Davison's sentencing hearing, Lucas Wells' father said he will never believe his son was attempting to sell marijuana.

Kim Wells of Reynolds said he thinks Rahman and Davison were trying to steal money from his son.

In a recent interview with the Journal and Courier, Lucas Wells' mother expressed concern about having to sit through Rahman's murder trial after attending Davison's court proceedings. She also wondered why children feel a need to carry a gun.

"I ask why. Is it coming from home, from television?" Julie Wells of Lafayette said. "Many times they say school. There is a lot of fear in school, a lot of people they're afraid of."

As he was led — handcuffed and shackled — from the courtroom for transportation to the Tippecanoe County Jail on Wednesday morning, Rahman said, "I love you" to family members.

Through the plea bargain, Rahman gives up his opportunity for a trial or to appeal his conviction on the five charges. The agreement will allow Prosecutor Jerry Bean to close the books on the 13-month-old case.

"This is an appropriate deal under the circumstances at this point," Bean said. "I'll be able to go into more detail after the sentencing."

---

Mere presence at the scene of a crime is not enough to establish one's guilt

Davis v State (In 1998)
452 N.E. 2d 305

A conspiracy is an agreement between two or more people to commit a crime. It is inapplicable to a single person.

Heid committed "(alleged) suicide" on 1-19-2002

During Davison's trial Feb. 22-24, 2000 Police officers David De Lion and Chris Downard testified that he (Davison) told them that he had a gun, and Prosecutor Jerry Bean presented the alleged gun as evidence. Therefore testimony and evidence were both false

In Rahman's plea agreement statement, Rahman states that he not they committed the crime.

Davison's conviction of guilty on Count II Conspiracy to commit Robbery while armed, contradicts not guilty verdict on Count I Robbery while armed

Therefore the "State" failed to prove all elements of its charges. (The gun.)

Later, based on Davison's false imprisonment Bean was fired after serving 3 terms as Prosecutor, January 2006

Davis v. State  452 N.E 2d 305 (Ind 1998)

Mere presence at the scene of a crime is not enough to
make a person guilty of the crime

Randall  Shepph

Kevin Jermaine Davison
1869 Fort St Apt 216
Lincoln Park, Mi
48146

CERTIFIED MAIL

7016 3560 0000 3508 7355

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

Office of the Clerk
United States District Court
24 Charles Halleck Federal Building
230 North Fourth St
Lafayette, In
47901





U.S. POSTAGE
PAID
LINCOLN PARK, MI
48146
AUG 01, 17
AMOUNT

$7.92
R2304N117886-10

1000

47901